Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAINES MYER,<br><br>     Plaintiff,<br><br>  v.<br><br>VINE ENERGY INC., ERIC MARSH, ANGELO ACCONCIA, H. PAULETT EBERHART, DAVID FOLEY, JOHN H. LEE, CHARLES M. SLEDGE, VINE ENERGY HOLDINGS LLC, HANNIBAL MERGER SUB, INC., HANNIBAL MERGER SUB, LLC, and CHESAPEAKE ENERGY CORPORATION.<br><br>     Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20 (a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Gaines Myer ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Vine Energy Inc. ("Vine" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell the Company to Chesapeake Energy Corporation ("Parent" or "Chesapeake") through merger vehicles Vine Energy Holdings LLC ("Merger Sub 1"), Hannibal Merger Sub, Inc. ("Merger Sub 2"), Hannibal Merger Sub, LLC ("Merger Sub 3" and together

- 1 -

with Vine, the Board, Parent, Merger Sub 1, and Merger Sub 2, the "Defendants") to enjoin an upcoming stockholder vote on a mixed cash and stock proposed transaction valued at approximately $2.2 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 11, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Vine will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Chesapeake.  Vine public stockholders will receive, in exchange for each share of Vine Class A share they own, 0.2486 Chesapeake shares of common stock and $1.20 of cash for each share of Vine common stock owned.

3.      Thereafter, on September 1, 2021, Chesapeake filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board failed to conduct a market check for potentially interested third parties.

5.      Moreover, the Registration Statement reveals that the Proposed Transaction fails to contain either a "collar" provision to protect minority stockholders from fluctuations in Chesapeake's share price or a "majority-of-the-minority" provision despite funds affiliated with Blackstone, Inc. ("Blackstone") holding more than 50% of the outstanding voting stock of the Company.

6.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all

Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on September 1, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Vine and Chesapeake, provided by Vine and Chesapeake to the Board's financial advisors Citi and Houlihan Lokey Capital, Inc. ("Houlihan Lokey") and Chesapeake's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi, Houlihan Lokey, and/or J.P. Morgan, if any, and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or.

**PARTIES**

9.      Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Vine stockholder.

10.      Defendant Vine is an energy company focused on the development of natural gas properties in the stacked Haynesville and Mid-Bossier shale plays in the Haynesville Basin of Northwest Louisiana.  Vine is incorporated under the laws of the State of Delaware and has its principal place of business at 5800 Granite Parkway, Suite 550, Plano, TX 75024.  Shares of Vine common stock are traded on the NYSE under the symbol "VEI."

11.    Defendant Eric Marsh ("Marsh") has been a Director of the Company at all relevant times.  In addition, Marsh serves as the Company's Chairman of the Board and Chief Executive Officer ("CEO").

12.    Defendant Angelo Acconcia ("Acconcia") has been a director of the Company at all relevant times.

13.    Defendant H. Paulett Eberhart ("Eberhart") has been a director of the Company at all relevant times.

14.    Defendant David Foley ("Foley") has been a director of the Company at all relevant times.

15.    Defendant John H. Lee ("Lee") has been a director of the Company at all relevant times.

16.    Defendant Charles M. Sledge ("Sledge") has been a director of the Company at all relevant times.

17.    Defendants identified in ¶¶ 12 – 17 are collectively referred to as the "Individual Defendants."

18.    Defendant Chesapeake's operations are focused on discovering and responsibly developing its large and geographically diverse resource base of unconventional oil and natural gas assets onshore in the United States.  Shares of Chesapeake common stock are traded on the Nasdaq Stock Exchange under the symbol "CHK."

19.    Defendants Merger Sub 1, Merger Sub 2, and Merger Sub 3 are subsidiaries of Vine and/or Chesapeake created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

21.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.    Vine an energy company, focuses on the development of natural gas properties in the stacked Haynesville and Mid-Bossier shale plays in the Haynesville Basin of Northwest Louisiana. The company was founded in 2014 and is based in Plano, Texas.

24.    The Company reported positive financial results in its most recent Press Release for the First Quarter 2021 Financial Results. For example, the Company reported $145 million of adjusted EBITDAX and $20 million of Adjusted Free Cash Flow.

25.    Speaking on the results, Defendant CEO Marsh commented in the May 17, 2021 Press Release, "'Our initial public offering begins a sequel in Vine's short but exciting history, and it was undoubtedly the most transformational quarter since 2014 when the company was created by the acquisition of our Haynesville asset. Following the combination of three successful companies, Vine today holds a strategic position in the Haynesville Basin and we have the size, scale and balance sheet to generate significant levered free cash flow and return capital to our shareholders, while concurrently upholding our longstanding commitment to safety and environmental stewardship. Though there are many new things about us, our core identity hasn't changed. Most notably, we have about 25 years of high-quality inventory that supports our ability to create free cash flow longevity, and our operating team is one of the most highly skilled,

technical collection of professionals in the industry. We harbor the institutional knowledge and technology which allows us to drill some of the most economic natural gas wells in North America. We believe we can eclipse past milestones as we reach new drilling and completion efficiencies, drive down capital intensity and operating expenses, and deliver on our expectations. Along the way, I believe improving natural gas fundamentals will hasten our bid to substantially increase the value of the company while holding production steady.'"

26.    The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Vine.  Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

27.    Despite this potential, the Individual Defendants have caused Vine to enter into the Proposed Transaction for insufficient consideration.

*The Flawed Sales Process*

28.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

29.    Notably, while the Registration Statement indicates that neither the Board, nor anyone on their behalf, conducted a market check for potentially interested third parties at any point throughout the sales process. In fact, the only other potentially interested third party mentioned by The Registration Statement contacted the Company of its own accord.

30.    Furthermore the Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

31.    The Registration Statement also fails to provide adequate reasoning as to why no "majority-of-the-minority" provision was included in the Proposed Transaction despite Blackstone being a controlling stockholder.

32.     The Registration Statement also indicates that the Company engaged two separate financial advisors for services relating to the sales process leading to the Proposed Transaction, namely, Citi and Houlihan Lokey. However, the Proposed Transaction does not contain any analyses performed by Citi, nor does it contain any information regarding what services Citi provided, or how much compensation they received or will receive for these services.

33.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Chesapeake, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Registration Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

35.     On August 11, 2021, Chesapeake issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **OKLAHOMA CITY, August 11, 2021** – Chesapeake Energy Corporation (NASDAQ:CHK) ("Chesapeake") and Vine Energy Inc. (NYSE:VEI) ("Vine") today announced that they have entered into a definitive agreement pursuant to which Chesapeake will acquire Vine, an energy company focused on the development of natural gas properties in the over-pressured stacked Haynesville and Mid-Bossier shale plays in Northwest Louisiana. The acquisition is a zero premium transaction valued at approximately $2.2 billion, based on a 30-day average exchange ratio as of Tuesday's close, equating to $15.00 per share.
>
> Transaction highlights include:
>
> - Vine shareholders will receive fixed consideration of 0.2486 shares of Chesapeake common stock plus $1.20 cash per share of Vine common stock, for total consideration of $15.00 per share, comprising of 92% stock and 8% cash

- Increases Chesapeake's cumulative five-year free cash flow[1] outlook by approximately $1.5 billion, or 68% of the transaction value, to approximately $6.0 billion, or 66% of pro forma enterprise value

- Immediately accretive to operating cash flow per share, free cash flow[1] per share, free cash flow yield[1], and GHG emissions profile

- 2022 pro forma net debt-to-EBITDAX[1] ratio of 0.6x, preserves Chesapeake's balance sheet strength

- Approximately $50 million in average annual savings expected from operating and capital synergies

- Expected to increase base dividend by 27% to $1.75 per share post close reflecting cash flow accretion of transaction, subject to Board approval

- Vine position consolidates Haynesville/Bossier adding approximately 370 premium 50% rate of return drilling locations at $2.50 NYMEX gas price

- Lowers Chesapeake's pro forma total gathering, processing and transportation (GP&T) expense by approximately 15% and diversifies the company's midstream partnerships

Mike Wichterich, Chesapeake's Board Chairman and Interim Chief Executive Officer, commented, "This transaction strengthens Chesapeake's competitive position, meaningfully increasing our free cash flow outlook and deepening our inventory of premium gas locations, while preserving the strength of our balance sheet. By consolidating the Haynesville, Chesapeake has the scale and operating expertise to quickly become the dominant supplier of responsibly sourced gas to premium markets in the Gulf Coast and abroad."

Eric Marsh, Vine's Chairman, President, and Chief Executive Officer said, "We firmly believe that the quality of our assets, combined with the scale, depth and diversity of Chesapeake's portfolio, and our shared unwavering commitment to ESG excellence, provides significant opportunity to accelerate the return of capital to our combined shareholders."

David Foley, Global Head of Blackstone Energy Partners added, "We believe in the benefits of consolidation. Blackstone looks forward to being a Chesapeake shareholder and participating fully in the significant value creation potential that will be unlocked by the combined company."

**Transaction Details**

Under the terms of the merger agreement, which was unanimously approved by the Board of Directors of each company, Vine shareholders will receive a fixed exchange ratio of 0.2486 Chesapeake shares of common stock and $1.20 of cash

for each share of Vine common stock owned. Upon closing, Chesapeake shareholders will own approximately 86% and Vine shareholders will own approximately 14% of the fully diluted shares of the combined company.

The transaction, which is subject to customary closing conditions, including certain regulatory approvals, and the approval of Vine shareholders, is expected to close in the fourth quarter of 2021. Funds managed by The Blackstone Group Inc. own approximately 70% of outstanding shares of Vine common stock and have entered into a support agreement to vote in favor of the transaction.

*Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicate that Vine insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Vine.

37.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Registration Statement provides the following, it fails to disclose an accounting of how much merger consideration the below holdings will be exchanged for upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner(1) | Common Stock Beneficially Owned | | Total Common Stock Beneficially Owned | | |
|---|---|---|---|---|---|
| | Number | Percentage | Number | Percentage | Percentage |
| **5% Stockholders:** | | | | | |
| Vine Investment LLC(2) | 1,551,334 | 3.8% | 17,387,012 | 50.8% | 25.2% |
| Vine Investment II LLC(3) | 10,312,823 | 25.1% | — | — | 13.7% |
| Brix Investment LLC(4) | 1,479,897 | 3.6% | 16,588,860 | 48.5% | 24.0% |
| Brix Investment II LLC(5) | 7,129,295 | 17.4% | — | — | 9.5% |
| Harvest Investment LLC(6) | 22,825 | * | 242,663 | * | * |
| Harvest Investment II LLC(7) | 104,547 | * | — | — | * |
| **Named Executive Officers and Directors:** | | | | | |
| Eric D. Marsh | 507,142 | 1.2% | — | — | * |
| Wayne B. Stoltenberg | 235,714 | * | — | — | * |

| | | | | | |
|---|---|---|---|---|---|
| David M. Elkin | 271,428 | * | — | — | * |
| Jonathan C. Curth | 67,858 | * | — | — | * |
| Brian D. Dutton | 25,000 | * | — | — | * |
| John H. Lee(8) | — | — | — | — | — |
| Charles M. Sledge | 28,571 | * | — | — | * |
| H. Paulett Eberhart | 10,714 | * | — | — | * |
| David I. Foley(9) | — | — | — | — | — |
| Angelo G. Acconcia(10) | — | — | — | — | — |
| **Executive Officers and Directors as a Group (11 persons)** | **1,146,427** | **2.8%** | **—** | **—** | **1.5%** |

38.    Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name | Unvested RSUs(1) (#) | Estimated Value(2) ($) |
|---|---|---|
| Eric D. Marsh | 507,142 | 7,454,987 |
| David M. Elkin | 271,428 | 3,989,992 |
| Wayne B. Stoltenberg | 235,714 | 3,464,996 |
| Jonathan C. Curth | 67,858 | 997,513 |
| Charles M. Sledge | 28,571 | 419,994 |
| H. Paulett Eberhart | 10,714 | 157,496 |

39.    In addition, certain employment agreements with certain Vine executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.

40.    These disparate interests held by the Director Defendants as discussed above are presented in the Registration collectively as follows:

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites/Benefits(3) ($) | Total ($) |
|---|---|---|---|---|
| Eric D. Marsh | 8,316,508 | 7,454,987 | 1,732 | 15,773,228 |
| David M. Elkin | 1,581,855 | 3,989,992 | 29,014 | 5,600,860 |
| Wayne B. Stoltenberg | 1,842,286 | 3,464,996 | 28,016 | 5,335,298 |
| Jonathan C. Curth | 1,346,712 | 997,513 | 29,014 | 2,373,239 |

41.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.    Thus, while the Proposed Transaction is not in the best interests of Vine, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

43.    On September 1, 2021, the Vine Board and Chesapeake caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

      a.    The specific reasoning as to why neither the Board, nor anyone on their behalf, conducted a market check for potentially interested third parties at any point throughout the sales process.

      b.    Adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

c. Adequate reasoning as to why no "majority-of-the-minority" provision was included in the Proposed Transaction despite Blackstone being a controlling stockholder;

d. Sufficient information as to why the Company engaged two separate financial advisors for services relating to the sales process leading to the Proposed Transaction;

e. Adequate information regarding the specific services rendered by Citi;

f. Specific information regarding the amount of consideration that has been paid to or will be paid to Citi for its services relating to the Proposed Transaction;

g. Whether the confidentiality agreements entered into by the Company with Chesapeake differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

h. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Chesapeake, would fall away;

i. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Vine and Chesapeake's Financial Projections*

45.    The Registration Statement fails to provide material information concerning financial projections for Vine and Chesapeake provided by Vine and Chesapeake management and relied upon by Citi, Houlihan Lokey, and J.P. Morgan in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company and Parent which are materially misleading

46.    The Registration Statement should have, but fails to provide, certain information in the projections that Vine and Chesapeake management provided to the Board, Citi, Houlihan Lokey, and J.P. Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.    With regard to the Vine Projections prepared by Vine management, the Registration Statement fails to disclose material line items for the following metrics:

a.    All specific assumptions and reasoning underlying them upon which the Projections are based, including the use of the NYMEX Strip Pricing as of July 22, 2021 through 2025 for the commodity price assumptions;

b.    Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: earnings, interest, income taxes, depreciation, depletion and amortization (EBITDA), and the specific adjustments made to exclude changes in fair value of unrealized derivative contracts, gains and losses from asset sales, impairment, gains or losses from early extinguishment of debt and certain other items;

c.    Operating Cash Flow, including all underlying necessary inputs and assumptions, including specifically: cash interest and cash income tax; and

d. Adjusted Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: cash capital expenditures.

48. With regard to the Chesapeake Projections prepared by Vine management, the Registration Statement fails to disclose material line items for the following metrics

a. All specific assumptions and reasoning underlying them upon which the Projections are based, including the use of the NYMEX Strip Pricing as of July 22, 2021 through 2025 for the commodity price assumptions;

b. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: earnings, interest, income taxes, depreciation, depletion and amortization, and the specific adjustments made to exclude changes in fair value of derivative contracts, gains and losses from asset sales, impairment, gains or losses from early extinguishment of debt and certain other items;

c. Operating Cash Flow, including all underlying necessary inputs and assumptions, including specifically: cash interest and cash income tax; and

d. Adjusted Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: cash capital expenditures.

49. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi, Houlihan Lokey, or J.P. Morgan financial analyses, or make an informed decision whether to vote in favor of the

Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey, Citi, and J.P. Morgan*

52.    In the Registration Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.    With respect to the *Vine Selected Companies Analysis*, the Registration Statement fails to disclose the following:

     a.  The specific metrics for each selected company;

     b.  The specific inputs and assumption used to determine the selected 2021 EBITDAX multiple range of 3.75x to 4.75x; and

     c.  The specific inputs and assumption used to determine the selected 2022 EBITDAX multiple range of 3.50x to 4.50x.

54.    With respect to the *Vine Selected Transactions Analysis*, the Registration Statement fails to disclose the following:

     a.  The specific metrics for each selected transaction;

     b.  The specific date on which each selected transaction closed;

     c.  The aggregate value of each selected transaction; and

     d.  The specific inputs and assumption used to determine the selected LQA EBITDAX multiple range of 4.00x to 4.75x.

55.    With respect to the *Vine Corporate Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

     a.  The projected unlevered, after-tax free cash flows of Vine utilized;

     b.  The specific terminal values for Vine utilized in the analysis;

c.  The specific inputs and assumptions used to determine the utilized range of terminal value multiples of 3.0x to 4.0x EBITDAX;

d.  Vine's weighted average cost of capital utilized in the analysis; and

e.  The specific inputs and assumptions used to determine the utilized discount rate range of 7.0% to 8.0%.

56.    With respect to the *Vine Net Asset Value Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a.  The estimated gas reserves in each of the 1P Reserves and 3P Reserves categories for Vine utilized;

b.  The specific inputs and assumptions used to determine the utilized risk adjusted discount rate range of 10% to 50% for the 3P reserves;

c.  The specific inputs and assumptions used to determine the utilized WACC discount rate range of 7.0% to 8.0% for the 1P reserves; and

d.  Vine's net debt.

57.    With respect to the *Chesapeake Selected Companies Analysis*, the Registration Statement fails to disclose the following:

a.  The specific metrics for each selected company;

b.  The specific inputs and assumption used to determine the selected 2021 EBITDAX multiple range of 4.50x to 5.50x; and

c.  The specific inputs and assumption used to determine the selected 2022 EBITDAX multiple range of 4.00x to 5.00x

58.    With respect to the *Chesapeake Selected Transactions Analysis*, the Registration Statement fails to disclose the following:

a.  The specific metrics for each selected transaction;

b.  The specific date on which each selected transaction closed;

c.  The aggregate value of each selected transaction; and

d. The specific inputs and assumption used to determine the selected LQA EBITDAX multiple range of 4.75 to 5.75x.

59.    With respect to the *Chesapeake Corporate Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The projected unlevered, after-tax free cash flows of Chesapeake utilized;

b. The specific terminal values for Chesapeake utilized in the analysis;

c. The specific inputs and assumptions used to determine the utilized range of terminal value multiples of 4.0x to 5.0x EBITDAX;

d. Chesapeake's weighted average cost of capital utilized in the analysis; and

e. The specific inputs and assumptions used to determine the utilized discount rate range of 7.5% to 8.5%.

60.    With respect to the *Chesapeake Net Asset Value Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The estimated gas reserves in each of the 1P Reserves and 3P Reserves categories for Chesapeake utilized;

b. The specific inputs and assumptions used to determine the utilized risk adjusted discount rate range of 10% to 50% for the 3P reserves;

c. The specific inputs and assumptions used to determine the utilized WACC discount rate range of 7.5% to 8.5% for the 1P reserves; and

d. Chesapeake's net debt

61.    In addition to the above, the Registration Statement fails to provide any financial analyses or related information whatsoever from Citi or J.P. Morgan, despite describing both of them as acting in a financial advisory role to Vine and Chesapeake respectively.

62.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Vine stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

64.     Plaintiff repeats all previous allegations as if set forth in full herein.

65.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

66.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

67.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

71.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

72.    Plaintiff repeats all previous allegations as if set forth in full herein.

73.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

74.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Vine's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.    The Individual Defendants acted as controlling persons of Vine within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual

Defendants had the power and authority to cause Vine to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Vine and all of its employees.  As alleged above, Vine is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 15, 2021                        **BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

- 21 -